THE STATE, EDWARD KELLOGG ET AL., PROSECUTORS, v. THE CITY OF ELIZABETH.

1. The advertisement required by the charter of the city of Elizabeth to be published by commissioners, that their report of assessment has been deposited with the city clerk, &c., must include at least so much of the report as designates what land was assessed and against what persons, as owners thereof, the assessments were made.

2. When the report of the commissioners is made to the common council with objections returned therewith, it must, under section 107 of the charter, be referred by common council to the proper committee for consideration, and the committee shall publish a notice, &c., to the parties interested, of the time and place, when and where they will meet to hear them on the objections and report; and it is not until after this notice has been given by the committee in the same manner

as that of the commissioners, that the committee have any authority to examine the matter and report to the common council; nor can the council, without such examination and report by the proper committee, and on proper notice, legally ratify the assessment.

On *certiorari.*

This writ brings up the proceedings of the city council in relation to the construction of a sewer in Wall street, from the Sound to the summit above Third street.

The ordinance under which these proceedings were had, was passed August 21st, 1868, and authorized the construction of a brick sewer between the points above designated.

The only brick sewer laid was from the Sound to Second street; from Second street to the summit above Third it was a stoneware pipe sewer.

The contract for constructing a brick and pipe sewer, &c., was awarded to McLaughlin & Kelley, as the lowest bidders, September 28th, 1868, and the work was accepted by the city, and the contract price, less previous payments, directed to be paid June 1st, 1869.

February 2d, 1870, the city council ascertained the whole amount of the costs, &c., of sewering Wall street, &c., to be $20,186.81, and appointed commissioners to make a just and equitable assessment of the same upon the owners of all the land and real estate benefited, &c.

April 1st, 1870, the commissioners presented their certificate of assessment, which, with the objections accompanying it, was referred to the committee on sewers and drainage.

Almost nine months afterwards, viz.: December 20th, 1870, this committee presented a report which was accepted and adopted, recommending that the certificate of assessment, &c., be referred to the city attorney for his opinion as to the regularity of the proceedings under the ordinance.

After another rest of about a year and nine months, the committee on sewers, &c., presented the following report: The committee beg leave to report, that said sewer was constructed six years ago; that the ordinance prescribed a brick sewer from the Sound to the summit above Third street;

State, Kellogg, pros., v. City of Elizabeth.

that on reaching Second street with the work, the city surveyor judged that it would be far less expensive to the property owners, and equally serviceable, to complete the sewer with pipe; this was done by him in the exercise of his discretion in conducting the work, and without any action of the council. The property owners have therefore constantly objected to the assessment, on account of its illegality, which objection is valid in the opinion of the city attorney; your committee, therefore, recommend that they be authorized to take up the pipe portion of the sewer, and proceed to re-construct it with brick, as was required by the original ordinance.

This report was presented September 2d, 1872, and the same day was received, its recommendation adopted, and ordered published in the minutes.

February 10th, 1873, after another interval of five months, the report of September 2d, 1872, together with all matters relating to the Wall street sewer, were referred to the then sewer committee, which, on the 17th of the same month, presented to the city council an elaborate report, covering the entire proceedings from their inception, including the objections which had been made to them by the property owners, as well as the committee's answers to such objections.

This report concluded with the following resolution: That the commissioners' report of the assessment of the whole amount of the costs, damages, and expenses, as assessed by them for sewering Wall street, from the Sound to the summit above Third street, be and the same is hereby ratified.

And a resolution to that effect was, the same day, adopted by the city council.

The writ in this cause was allowed returnable to June Term, 1873.

Argued at November Term, 1874, before Justices BEDLE, WOODHULL and VAN SYCKEL.

For the prosecutor, *W. J. Magie.*

For the defendants, *R. E. Chetwood.*

The opinion of the court was delivered by

WOODHULL, J.  One of the reasons assigned for setting aside these proceedings is, that the assessment was not made according to law.

This assessment was made under, and by virtue of, the provisions of the act entitled "an act to revise and amend the charter of the city of Elizabeth," approved March 4th, 1863. *Acts*, 1863, *p.* 109, &c.

Section 104 of that act requires that the commissioners appointed to make any such assessment, shall make a report by a certificate in writing of the assessment so made, and before proceeding to sign the same, shall place the said report in the office of the city clerk for examination by the parties interested therein, and shall give notice in a newspaper printed and published or circulating in the city of Elizabeth, which notice shall be published for one week, that such report has been deposited as aforesaid, and also of the time and place when and where the parties interested can be heard by the said commissioners; and that, after hearing the parties, the commissioners shall proceed and complete the report and sign the same and return it, with all the objections in writing which shall be presented to and left with them, by any of the parties interested, to the city council.  *Acts*, 1863, *p.* 149.

The notice which the commissioners caused to be published, and which they no doubt thought a sufficient compliance with the provisions of the charter, was as follows:

"WALL STREET SEWER.—The undersigned commissioners, appointed by the city council of the city of Elizabeth, to make an assessment of the costs, damages and expenses of sewering Wall street, from the Sound to the summit above Third street, hereby give notice that the report of the commissioners has been this day filed in the office of the city clerk for examination by all parties interested therein.  All persons, whose interests are affected by the above named assessment, are hereby notified that the commissioners will meet, &c., when all parties interested will be heard by them."

The question as to the sufficiency of such a notice to satisfy the requirements of section 104 of the charter of the city of Elizabeth, is not an open one in this court.

In The State v. Mayor and Council of Newark, it was expressly held that, with respect to exactly similar provisions, a notice, more explicit than the one now under consideration, was fatally defective.

Mr. Justice Elmer, in delivering the opinion of the court in that case, says : "It is fully settled, by the opinion of this court and of the Court of Errors, that, in every proceeding affecting the property of individuals, the owners are entitled to full and fair notice of the proceedings. *The State* v. *Jersey City*, 4 *Zab.* 666 ; *Vantilburgh* v. *Shann*, 4 *Zab.* 740. If the statute regulating the proceedings substitutes a notice by advertisements, published in a manner prescribed, for a personal notice, such a substitute will, of course, be held sufficient; but it must be very plain language which will justify the court in holding that the legislature meant to substitute, by way of a published advertisement, anything less explicit than would be required in a written notice, actually delivered to the person whose property was meant to be affected. In my opinion, the commissioners were required to include in their published notice the report itself, or at least so much of it as designated, not only what land was assessed, but against what persons, as owners thereof, the assessments were made. Nothing less than this was a notice what report was made, and nothing less could be a compliance with the reasonable design of the advertisement." *State, Peters, pros.,* v. *Mayor, &c., of Newark*, 2 *Vroom* 369; *Charter of Newark*, § 108; *Acts*, 1857, *p.* 167.

Another objection equally fatal to this assessment is, that it does not appear to have been ratified by the city council in the manner prescribed by the charter.

Section 107 of the charter provides that every certificate of assessment made under the provisions of section 104, and presented to the city council, shall be referred by them to the proper committee for consideration ; and in case of any objections in writing being returned with such report, the said

committee shall publish a notice, &c., to the parties interested of the time and place, when and where they will meet to hear them on the objections and. report; and that the said committee shall thereupon examine the matter and report to the city council, and return to them the report of the commissioners, with the objections of the parties, together with the views and opinions of the said committee respecting the said report.

Section 108 · enacts, that the city council shall thereupon examine the matter, and may correct said report and assessment, if they deem proper, and ratify the same.

In addition, then, to the notice which the commissioners are to give before completing and signing their report, and returning it to the common council, the charter plainly requires that where, as in the present case, objections in writing are returned with the report, another notice, to be published in the same manner and for the same time as the first one, shall be given by the committee, &c., stating when and where they will meet to hear what the parties interested may have to say to them respecting the report and the objections.

And it is not until after this notice has been given, that the committee have any authority to examine the matter and report to the city council; nor can the city council, without such examination and report by the proper committee, and on proper notice, legally ratify the assessment.

The prosecutors are not chargeable with laches. This assessment, although completed by the commissioners as long ago as March, 1870, was not ratified, nor was any attempt made to ratify it, until February, 1873.

Besides the complaint about the character of the work done, and the quality of the materials used in the construction of the Wall street sewer, the authority to construct such a sewer at all, under the ordinance of August 21st, 1868, had, from the first, been called in question. The proceedings of the common council, in the meantime, and the reports of their committees, had been such as might naturally induce the objectors to believe that their views were so for acquiesced in

by the common council that no attempt would ever be made to enforce the payment of the assessment.

Nothing inconsistent with such a belief appears to have been done by the common council prior to the attempted ratification of February 17th, 1873, and within a month or two from that time the writ in this case, was allowed.

Not deeming it to be necessary to refer more particularly than has been already done, to the objections relating to the authority of the common council to order an assessment, under the ordinance in question, for anything else than a brick sewer, and to those relating to defective work, and defective materials, in the construction of the sewer, as laid, my conclusion is, that the entire assessment, brought up by this, and other similar writs, must, with all the proceedings under it, be set aside.